[Cite as *AKC, Inc. v. United Speciality Ins. Co.*, 2019-Ohio-2809.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

AKC, INC., dba CLEANTECH

    Appellant

    v.

UNITED SPECIALITY INSURANCE
COMPANY, et al.

    Appellees

C.A. No.    29197

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2016-11-5009

DECISION AND JOURNAL ENTRY

Dated: July 10, 2019

TEODOSIO, Presiding Judge.

{¶1} AKC, Inc., dba CleanTech, assignee of Globalcor Associates, L.L.C. ("AKC"), appeals the order of the Summit County Court of Common Pleas granting summary judgment in favor of United Specialty Insurance Company ("United") and Cilantro Thai, Inc. ("Cilantro"). We reverse and remand.

I.

{¶2} AKC is a corporation engaged in the cleaning and casualty restoration business that was assigned a claim for damages from Globalcor Associates, LLC, dba Bank Nightclub. The damages stemmed from an insurance claim for sanitary sewer backup and cleaning and restoration costs at the Bank Nightclub in Akron, Ohio. In November 2016, AKC filed its complaint alleging breach of contract against United and negligence against two restaurant businesses: Cilantro, and USAFA, LLC, dba Bricco. AKC alleged that the two restaurants adjoining the Bank Nightclub had been negligent in causing the sewer backup by dumping

cooking grease into their sanitary drain lines, which connected to a common drain line used by Globalcor.

{¶3} The complaint also alleged that Globalcor was instructed by its insurer, United, to proceed with the immediate clean-up of the sewage in order to prevent further damage. Subsequently, Globalcor contacted AKC to perform the clean-up and restoration, which was completed in December 2014. After the completion of the work, United informed Globalcor that it was denying the insurance claim because the damage was excluded by provisions of the existing insurance policy. In March 2015, Globalcor assigned its claim for damages to AKC. In its complaint, AKC alleged that United committed a breach of contract in denying the claim.

{¶4} All three defendants filed motions for summary judgment on the claims made against them by AKC, with the trial court granting summary judgment in favor of all three defendants in September 2018. AKC now appeals raising two assignments of error.

II.

{¶5} As a preliminary matter, we address two motions presently before this Court. First is Cilantro's motion to strike "Issue No. 6" of AKC's reply brief. In its reply brief to this Court, AKC raises an argument not contained within the appellant's brief filed in this matter. Loc.R. 7(D) provides that reply briefs shall be restricted to matters in rebuttal of the appellee's brief. Because "Issue No. 6" of the reply brief raises a new argument that is not restricted to a matter of rebuttal, it is hereby stricken from the record.

{¶6} The second motion before this Court is AKC's motion to dismiss its appeal with prejudice as to USAFA, LLC, dba Bricco. The motion is granted and USAFA, LLC, dba Bricco is dismissed from this appeal with prejudice.

## III.

{¶7}   Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C).  A court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358–359 (1992).  A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor. *Perez v. Scripps– Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

{¶8}   The Supreme Court of Ohio has set forth the nature of this burden-shifting paradigm:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.  The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case.  Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims.  If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied.  However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF UNITED SPECIALTY ON THE "POLLUTION EXLUSION" IN THE SUBJECT POLICY[.]

{¶9}    In its first assignment of error, AKC argues the trial court erred in granting summary judgment in favor of United Specialty based upon the "pollution exclusion" in the subject insurance policy, making three separate arguments that we address separately below.

{¶10} Under this assignment of error, AKC first argues the trial court erred in interpreting the contract term "pollutant" to include raw sewage because it is not the only interpretation that can be fairly placed on the policy language and because it is contrary to Ohio law.  The policy excludes coverage "for loss or damage caused by or resulting from * * * [the d]ischarge, dispersal, seepage, migration, release or escape of 'pollutants' unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the 'specified causes of loss.'"  Under the policy "pollutants" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."

{¶11} The trial court specifically found that "raw sewage" was included within the definition of "pollutant."  The trial court also found, however, that the stated terms "discharge, dispersal, seepage, migration, release or escape" did not encompass "back-up or overflow."  The trial court therefore did not find that coverage was excluded as a basis of this provision, and noted "this determination is not key to the resolution of the motion."  Because this particular exclusionary provision was not applied by the trial court, we find AKC's first argument to be moot.

{¶12} AKC next argues that the trial court erred because it mistakenly assumed that a sanitary sewer line carrying raw sewage is the same as a storm sewer line carrying surface water runoff. The finding in question states that the exclusion for "water" backing up or overflowing from a sewer includes "raw sewage" that backs up or overflows from the same sewer line. AKC has failed to show that this finding is based on the assumption that a sanitary sewer line carrying raw sewage is the same as a storm sewer line carrying surface water runoff, and we decline to reach such a conclusion.

{¶13} AKC's third argument addresses the finding of the trial court that the exclusion for water backing up or overflowing from a sewer includes raw sewage that also backs up. AKC contends this is not the only interpretation that can be fairly placed on the policy language.

{¶14} "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Lane v. Grange Mut. Cos.*, 45 Ohio St.3d 63, 65 (1989). "The insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect." *Id.*

{¶15} The policy at issue provides:

B. Exclusions

> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. . . .

>> g. Water

>>> (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

>>> (2) Mudslide or mudflow;

(3)  Water that backs up or overflows from a sewer, drain or sump; or

(4)  Water under the ground surface pressing on, or flowing or seeping through:

      (a)      Foundations, walls, floors or paved surfaces;

      (b)      Basements, whether paved or not; or

      (c)      Doors, windows or other openings.

{¶16}  We reviewed a similar exclusionary provision in *Fairlawn Properties, Inc. v. Liberty Mut. Ins. Co.*, where the policy excluded "[l]oss caused by, resulting from, contributed to or aggravated by * * * water which backs up through sewers or drains." *Fairlawn Properties, Inc. v. Liberty Mut. Ins. Co.*, 9th Dist. Summit No. 10671, 1982 WL 5163, *2 (Dec. 8, 1982). The appellee in the case argued that the provision may have applied to water, but did not apply to raw sewage. *Id*. The trial court found:

> At first blush, it may seem that 'water' is simply another word for 'liquid.'  This, however, is not accurate, inasmuch as all water is liquid but not all liquids are water.  Water is a specific substance, having a definite formulation of hydrogen and oxygen, and nothing else.  In this case, the policy could have defined the excluded damage as being that caused by liquids, or by water-borne material.  The fact is, however, that the broader terms were not used and the more narrow term was used.  This fact necessitates drawing a distinction between damage caused solely by water and damage caused by those things that might be found in water.  An example of the former might be destruction caused by high water, or by things floating away, or things becoming useless because of being water-logged.  Examples of the latter might be stains or foul odors.
>
> * * *
>
> It seems clear that the material which caused the damage in this case was not water, but whatever was in whatever liquid it was that came out of the sanitary sewer.  Further buttressing this construction would be the observation that the choice of words by the insurance company was consistent with the well-known

exemption in nearly all property insurance policies of damages caused by floods. This sort of damage is what was trying to be exempted, and this is why the word 'water' was used. The damage in this case was simply not the kind of flood damage so contemplated.

*Id.*

**{¶17}** We agreed with the trial court's finding that the exclusion was ambiguous, stating:

The broad provisions of coverage are to insure the property of the insured. Exclusions in the policy should be definite and detailed and not lend themselves to other subjective determinations. As the trial court pointed out, questions arise as to whether the exclusion deals with water which backs up through storm sewers which ordinarily carry runoff and drainage water alone. If the exclusion was to have encompassed raw sewage backing up from sanitary sewers it could have specifically so stated.

We recognize appellant's argument that raw sewage also contains water. However, the facts herein lead us to the conclusion that in order to apply the exclusion questions are presented, and for that reason we find the trial court's judgment, as to exclusion (D) being ambiguous, is supported by the record.

*Id.* at *3.

**{¶18}** In reviewing the policy issued by United, we note that the section setting forth the exclusion is specifically listed under the category of "water." Three of the four subsections mention only water, with the second subsection specifying "[m]udslide or mudflow." Had the insurer wished to exclude "sewage" from coverage, it could have easily and succinctly done so with the mere addition of the very word, as other insurance policies have done. *See Hartman v. Erie Ins. Co.*, 6th Dist. Wood No. WD-16-022, 2017-Ohio-668, ¶ 34 (concerning a policy stating a "water damage" exclusion for "water *or sewage* which backs up through sewers or drains or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation") (Emphasis added.).

{¶19}  The rationale we set forth in *Fairlawn Properties* is equally applicable to this matter.  We conclude the provision of the insurance contract was reasonably susceptible of more than one interpretation, and therefore should be construed strictly against the insurer and liberally in favor of the insured.  *See Lane* at 65.

{¶20}  AKC's first assignment of error is sustained.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF * * * CILANTRO * * * [.]

{¶21}  In its second assignment of error, AKC argues the trial court erred in granting summary judgment in favor of Cilantro.  As in the first assignment of error, AKC raises three separate arguments under this assignment of error.

{¶22}  AKC first argues that it presented evidence that both parties to the assignment of claims by Globalcor to AKC intended that negligence claims against any tortfeasors subject to subrogation to the insurance claim were to be included in the assignment.  In its second argument, AKC contends that because Globalcor assigned AKC its negligence claims for physical damage, the economic loss doctrine does not apply.  Finally, AKC argues that the affidavit of Delmas Roy of the Akron Department of Public Service established that "grease traps are installed in commercial kitchens to prevent sanitary sewer blockage, and that failure to clean those grease traps can lead to the sewer back-up that Globalcor experienced."  AKC contends this evidence satisfies the "duty" element of its negligence claim.

{¶23}  Although the trial court found that AKC did not receive an assignment from Globalcor to pursue a negligence claim against Cilantro, it further found that even if the negligence claim had been otherwise viable, AKC failed to produce any evidence to establish that Cilantro owed AKC or Globalcore a duty, that it breached that duty, or that its damages were

proximately caused by the breach of duty. The trial court specifically stated that it granted summary judgment in favor of Cilantro on that basis. None of the arguments set forth by AKC in its assignment of error address the failure to produce evidence of a breach of duty or of proximate cause. This failure renders the arguments set forth by AKC moot, as those arguments alone could not sustain the assignment of error.

{¶24} AKC's second assignment of error is overruled.

IV.

{¶25} Cilantro's motion to strike "Issue No. 6" of AKC's reply brief is granted. AKC's motion to dismiss its appeal with prejudice as to USAFA, LLC, dba Bricco is granted. AKC's first assignment of error is sustained. AKC's second assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is reversed and remanded for further proceedings consistent with this opinion.

Judgment reversed
and remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JOHN CURTIS ALBERTI, Attorney at Law, for Appellant.

JEFFREY S. MAYNARD, Attorney at Law, for Appellee.

ERIC J. WILLIAMS, Attorney at Law, for Appellee.

JOHN L. ANTEL, Attorney at Law, for Appellee.